HODGE, J.,
This case was before the court for a custody trial following the filing of defendant’s petition for special relief and modification of custody. The plaintiff, Aisha L. Blackshear (hereinafter, “mother”), and the defendant, Damon L. Blackshear (hereinafter, “father”) are the natural parents of the subject minor child, Aliya Blackshear, bom August 31,2002. Both mother and father desire primary physical custody of Aliya. Prior to reaching the merits of the parties’ requests, the court will provide the following summation of the relevant procedural and factual background.
Mother and father were married on October 18, 1996 and separated on August 1, 2013. Mother and father have four children together, an adult daughter, Latisha Blackshear; Miyah Blackshear, bom May 30, 1996; Damiane Blackshear, bom December 15,1999; and Aliya Blackshear, bom August 31,2002. The parties’ competing requests for primary physical custody only apply to the youngest child, Aliya. Following the parties’ separation, *21 mother moved to Austintown, Ohio with Aliya while father remained in New Castle, Pennsylvania. Mother and father then entered into a custody agreement, whereby mother would enjoy primary physical custody of Aliya, and father would enjoy partial custody every other weekend. Father retained primary custody of Miyah and Damiane. The parties’ agreement permitted all of the minor children to be together with the custodial parent every weekend. This agreement was filed of record on October 11, 2013.
In February of 2014, mother informed father that Aliya wished to return to New Castle, Pennsylvania and live primarily with father. Father agreed to this arrangement and enrolled Aliya into the New Castle Area School District for the remainder of the academic year. From February 2014 through November 2014, father retained primary custody of Aliya. Mother exercised partial custody every other weekend. On November 23, 2014, following the Thanksgiving Holiday, mother refused to return the minor child to father’s custody.
On December 5,2014, father filed a petition for special relief and modification of custody order requesting that the court modify the October 11, 2013 consent custody order to reflect the current agreement entered into by the parties whereby father maintained primary custody of Aliya. After considering father’s petition, the court directed the parties to comply with the October 11, 2013 custody agreement pending a conference. Mother was directed to ensure that the minor child continue to attend school in the New Castle Area School District if mother chose to exercise primary custody. Following a custody conference, a temporary custody order was entered granting father primary custody and providing mother with partial custody every other weekend. Additionally, *22 a custody trial was scheduled before this court on March 11, 2015. The parties’ competing requests for primary physical custody of Aliya are presently before the court for a determination.
In any custody proceeding, the court’s main concern is the most appropriate custody arrangements for the minor child. 23 Pa.C.S.A. §5327(a); K.B. v. C.B.F., 833 A.2d 767, 111 (Pa. Super. 2003). In a custody contest, such as the case now before the court, where the dispute arises between two parents, the burden of proof is shared equally between the parties, as the court will not presume that custody should be awarded to a particular parent. Id.
In making a determination, the court bases its findings on how the best interests of the child may be served. Arnold v. Arnold, 847 A.2d 674, 677 (Pa. Super. 2004). It is axiomatic that the paramount concern in a child custody case is the best interests of the child, and the court makes its determination based upon a consideration of all factors legitimately affecting the child’s physical, intellectual, moral and spiritual well being. Id.
At the time of the custody trial, mother appeared pro se. Mother failed to file a pre-trial statement, custody inquiry form or criminal report and abuse verification form, despite specific direction to do so from this court on December 22,2014. Father did comply with the December 22, 2014 order and filed the necessary forms prior to the custody trial.
Mother’s testimony to the court was limited, and it did not address many of the statutory factors considered by the court in a custody action. Mother testified to the following: when Aliya requested to live with father in February 2014, it was because Aliya was having a hard time adjusting *23 in school. Mother expected to resume primary custody of Aliya prior to the 2014-2015 academic year. Mother stated that she tried to enroll Aliya in the Austintown Area School District, but then the December 5, 2014 order of court directed mother to transport the minor child to school at the New Castle Area School District. Mother stated that even if she is not awarded primary custody of Aliya, she would like to have additional time with Aliya on the weekends.
The court summarizes father’s testimony as follows: father is remarried. Father lives with his wife, her two children, and father’s three minor children. Father’s household accommodates his large family. Aliya is very close to father and her siblings and step-siblings. Aliya is also close with her step-mother. Aliya excels academically, and she is involved in several extra-curricular activities including volleyball and her youth group.
Father is presently unemployed. Father receives social security income and social security disability. Father is attempting to resume employment, and he is taking classes to obtain a job. Father is very active in his role as primary caregiver, and father desires to continue in this capacity. Father does not oppose providing mother with partial custody every other weekend, provided that she is responsible for transportation.
In addition to the testimony presented by the parties, in all custody proceedings, a court must consider the statutory factors set forth in 23 Pa.C.S.A. §5328(a); see also B.K.M. v. J.A.M., 50 A.3d 168 (Pa. Super. 2012)(holding that “best interests of the child” analysis requires consideration of all Section 5328(a) factors). The court will address each of these factors in the following discussion.
*24 (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
Father and mother both encourage and permit contact between the other party and the minor child. When mother has custody of the child, the child is permitted to contact father and vice versa. Additionally, in her report to the court, attorney Nene, the guardian ad litem, stated that neither parent speaks discouragingly about the other parent in the presence of the child.
(2) The present and past abuse committed by a party or member of the party’s household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
There has been no evidence regarding abuse committed by either party.
(3) The parental duties performed by each party on behalf of the child.
Both mother and father perform all the necessary tasks associated with raising the minor child when they are exercising custody. Mother and father both played a strong role in caring for the minor child during their marriage. Mother and father both demonstrate a willingness to continue to care for Aliya.
(4) The need for stability and continuity in the child’s education, family life and community life.
This is a very important factor in the court’s analysis. Aliya experienced a disruption in her household routine in December of 2014 following this court’s December 5, 2014 order of court. The court was unwilling to deviate *25 from the current custody order prior to the parties appearing before the custody officer. To her credit, mother ensured that Aliya attended school daily, despite the commute to New Castle from Austintown.
The prior transfer of primary custody resulted from Aliya having a hard time adjusting to school in Austintown, and the testimony establishes that she is excelling both academically and socially at father’s residence. Consequently, this factor weighs in father’s favor because if he were awarded primary custody, the corresponding schedule would be more consistent with the status quo and common routine Aliya presently enjoys.
(5) The availability of extended family.
Father and stepmother have a large extended family in the New Castle area. The majority of mother’s extended family is also in the New Castle area.
(6) The child’s sibling relationships.
Aliya has three siblings and two step-siblings. All of Aliya’s siblings reside with father, with the exception of her oldest sister, Latisha, who also lives in the New Castle area. Father stated that Aliya is very close to all of her siblings, and consequently, a custody award in father’s favor would promote these relationships.
(7) The well-reasoned preference of the child, based on the child’s maturity and judgment.
The testimony offered by father and the report of the guardian ad litem indicate that Aliya desires to remain in her father’s household. Aliya maintains a strong connection to the New Castle community because she has friendships and various activities in the area.
*26 (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
The testimony presented did not include evidence to support a finding regarding a party’s attempt to turn the child against the other parent. The court will not consider this factor in its determination.
(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child’s emotional needs.
Both mother and father are able to provide the minor child with a loving and stable environment. Furthermore, the court is satisfied that both mother and father care for the minor child’s emotional needs while she is in their custody.
(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
Similar to the court’s determination under subsection nine, both mother and father are able to attend to the minor child’s daily needs. The testimony does establish, however, that Aliya has performed better in the New Castle Area School District, while residing with father, than she did while attending school at Austintown, while at mother’s residence.
(11) The proximity of the residences of the parties.
The parties reside approximately forty minutes apart. They live in different states and different school districts. While the court does not believe the distance between mother’s residence and father’s residence creates a *27 substantial impairment to either party’s ability to exercise custody, it does require that one party exercise primary custody, especially during the academic year.
(12) Each party’s availability to care for the child or ability to make appropriate child-care arrangements.
The court is satisfied that both parties are able to care for the minor child while she is in their custody. Father’s testimony establishes that father has a stronger support system and is more available for the minor child on a daily basis. The court believes that mother is conclusively able to care for the minor child, but mother’s testimony was void of any facts to establish her ability to make appropriate child care arrangements while she is at work. Mother’s testimony also failed to address how mother could accommodate additional weekend visitation with Aliya when mother works two weekends out of the month.
(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party’s effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
Each party testified that there is a high level of conflict and poor communication between them. Mother and father resort to text messaging one another regarding custody exchanges and Aliya’s schedule. Encouragingly, however, the guardian ad litem report indicates that Aliya is removed from any conflict between the parties, and is therefore affected minimally by this factor.
(14) The history of drug or alcohol abuse of a party or member of a party’s household.
There was no evidence presented with respect to drug *28 or alcohol abuse by either party. Therefore, this factor will not be included in the court’s determination.
(15) The mental and physical condition of a party or member of a party’s household.
Mother and father did not present any evidence to this court which questioned the mental and physical condition of the opposing party.
After considering the testimony presented by the parties, in addition to completing the statutory analysis as set forth above, the court determines that the best interests of the minor child will be served by father maintaining primary custody of Aliya. The court believes that it is crucial for Aliya to continue to attend school in the New Castle Area School District because she has flourished academically there. Additionally, the court finds that Aliya has established an appropriate social structure within her community while residing with father, and the court does not want to disrupt the positive lifestyle Aliya currently enjoys. For these reasons, the corresponding custody order shall award father primary custody, subject to the partial custody rights of mother.
ORDER OF COURT
And now, this 17th day of March, 2015, the above captioned case having been scheduled for a custody trial, with the plaintiff/mother Aisha L. Blackshear appearing pro se, the defendant/father Damon L. Blackshear appearing with his attorney Deborah A. Shaw, Esquire, and with Joanne Nene, Esquire, appearing as guardian ad litem, and consistent with the attached opinion, the court hereby orders and decrees as follows:
1. The mother and father shall have shared legal custody *29 of the minor child, Aliya Eve Blackshear bom August 31, 2002. Legal custody is the legal right to make major decisions affecting the best interest of the child. Major decisions affecting the child include, but are not limited to, health, medical, dental, orthodontic, mental health treatment, counseling, education, and religious training and upbringing. Except in the case of emergencies, the custodial parent shall consult with and obtain consent from the non-custodial parent. Shared legal custody does not give one parent final authority to make a decision in the event of a dispute.
Neither parent shall enroll the child into curricular or extra-curricular activities without prior notice to and consent from the other parent. Each shall consult with the other parent and receive consent from the other parent prior to enrolling the child in said activity. Each parent shall keep the other informed of the child’s activities, schedule, school events, and medical appointments. Each parent shall keep the other notified of all important issues regarding the minor child.
Both parents shall have the right to obtain and review all records of the child, including, but not limited to, medical, dental, psychiatric, educational, and religious, in accordance with Title 23 Pa. C.S.A. §5336. The parents shall execute any and all documents or releases necessary to effectuate legal custody, including, but not restricted to authorizations and/or releases for school reports, medical reports, mental health reports, counseling reports, insurance documents, and documents related to state, local, or federal authorities. This order shall serve as a release to any medical, mental health and counseling, educational or religious provider to release reports/information to both parents. Pursuant to Title 23 Pa. C.S.A. §5336, both *30 parents have access to the child’s records and information.
2. The defendant/father, Damon L. Blackshear, is awarded primary physical custody of the minor child, Aliya Eve Blackshear, subject to the partial custody rights of the plaintiff, mother, Aisha L. Blackshear, as outlined below.
3. Mother shall have custody of the minor child every other weekend beginning after school on Friday until 6:00 p.m. Sunday. Mother’s periods of partial custody shall coincide with mother’s weekends off.
4. Unless otherwise agreed, custody on holidays shall be as specified in paragraphs 4, 5, 6, 7 and 8 in the prior order of court dated October 11, 2013.
5. The holiday custody schedules shall supersede all regular periods of partial custody/custody including summer partial custody and custody periods.
6. The parties shall share the responsibility of transporting the minor child for custody exchanges. The party receiving the child shall be responsible for transporting the child. Transportation may be provided by a family member or someone well known to the child. All parties and anyone else involved with transportation shall comply with the laws and regulations of the Commonwealth of Pennsylvania, including those regarding child safety restraint apparatus in any vehicle used to transport the child. The primary purpose of the exchange is to exchange the child, and not to communicate regarding custody issues.
7. Plaintiff/mother shall immediately file a criminal report or abuse history verification form with the prothonotary of Lawrence County.
*31 8. The parties may modify the terms of this custody order, as they both agree from time to time. One parent shall not modify any provision without the consent of the other.
9. The parties are directed to fully cooperate with each other in fulfilling the requirements of this order and all other orders in connection with this matter and to comply with all provisions contained in the order(s). All communications regarding custody issues shall take place directly between parents, never using their child as an intermediary.
10. While in the presence of the child, neither the father nor the mother shall make any remarks or do anything which can in any way be construed as derogatory or uncomplimentary to the other, and it shall be the duty of each parent to uphold the other parent as one whom the child should respect and love. To the extent possible, each party shall not permit any other person from making derogatory comments in the presence of the child. Each parental figure shall refer to the other by the appropriate role names such as mom, dad, your grandmother, etc.
11. Lawrence County retains jurisdiction of this custody case. Neither party shall remove the child from the jurisdiction of this court with the intent of changing the physical residence of the child without the written consent of the other party or approval of the court. No relocation, as defined in Title 23 Pa. C.S.A. § 5322, with the minor child shall occur without the consent of every person who has custodial rights to the minor child, or without approval of the court. Any person desiring to relocate with the minor child must comply with the obligations of Title 23 Pa. C.S.A. § 5337, including, but not limited to, providing *32 the required sixty (60) day notice.
12. A review conference may be scheduled upon motion of either party.
13. The parties shall abide by the terms of the appendix attached hereto, incorporated herein, and made a part hereof. The parties shall read the appendix immediately and shall familiarize themselves with the provisions contained therein.
14. The parties are obligated to notify the prothonotary of Lawrence County of any change of address.
15. The prothonotary shall be responsible for properly serving a copy of this order upon all counsel of record, and unrepresented parties in this action, in accordance with Pa.R.C.P. No. 236, and Rule L 236.