J-S35031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| R.W., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| C.C., | |
| Appellant | No. 206 EDA 2015 |

Appeal from the Order Entered December 19, 2014
in the Court of Common Pleas of Delaware County
Domestic Relations at No.: 14-001370

BEFORE:  MUNDY, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JUNE 23, 2015**

Appellant, C.C. (Mother), appeals from the order of the Court of Common Pleas of Delaware County entered December 19, 2014, awarding, in pertinent part, shared physical custody of their daughter, E.W. (Child) to Appellee, R.W. (Father).[1]  The order also denied Mother's (after-the-fact) petition to relocate to Florida and directed her to return from Florida with Child to the Delaware County area within sixty days.  Mother challenges the weight of the evidence.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother erroneously appeals from the date of the custody trial, November 19, 2014.  The trial court entered the custody order at issue here on December 19, 2014.  Appeal lies from the final order, not the trial.  We have changed the caption accordingly.

Mother and Father are the natural parents of E.W., born January 25, 2013. They met in high school, and Mother became pregnant in her junior year. They were both seventeen years old when Child was born. The parties never married. Mother, Father and Child resided for several months before and after Child's birth with Father's father. Then Mother moved with Child to the home of her mother and stepfather when Child was about four months old.[2]

When Mother moved in with her mother, the parties agreed that Father would have visitation with Child on alternating weekends. However, around January or at least by February of 2014, Mother apparently began refusing visitation to Father.

On February 12, 2014, Father filed a *pro se* complaint alleging that Mother had not allowed him to see Child for several weeks and requesting shared physical and legal custody. Shortly after Mother was served with this complaint, she withdrew from high school, quit her part-time job, and after two relatively brief stays with her mother and grandmother, moved with Child and her new boyfriend to Brooksville, Florida (the boyfriend's

---

[2] Many of the dates provided by the parties for relevant events are imprecise, and sometimes contradictory. The actual events are not in dispute, unless otherwise noted. The exact dates of the occurrences are not material to our review or disposition.

hometown, near Tampa).[3] Although Mother testified that she had Father's agreement, the trial court found that Mother moved to Florida without Father's consent, or the permission of the court. (**See** Final Custody Order, 12/19/14, at 6 ¶ 12; Trial Court Opinion, 1/28/15, at 2-3).

On or about March 3, 2014, Mother entered into a one-year lease on a three bedroom mobile home in Brooksville. Mother's eighteen-year old boyfriend and his grandmother were also parties to the lease. Also living in the same mobile home were the boyfriend's mother and two brothers.

Father first flew to Tampa for an exchange of Child, and afterward, his sister made the trip while he worked. Both parties have low-paying part-time jobs.[4] (**See** Trial Ct. Op., at 9). Father testified that he borrowed money from his grandmother to help pay for the airplane trips. (**See** N.T. Trial, 11/19/14, at 60-61). There is no substantial dispute to his testimony that on his limited salary he could not continue to pay for frequent airfares indefinitely. (**See id.** at 62).

---

[3] The boyfriend became Mother's fiancé around May of 2014.

[4] Each earns about $8 an hour. Father testified he is a part-time supermarket bagger for which he is paid about $8.16 an hour. (**See** N.T. Trial, 11/19/14, at 62). He graduated from high school and at the time of trial he was attending welding school. Mother testified that after she moved to Florida she completed her high school education and graduated with honors. Shortly before the trial Mother obtained an eight dollar an hour job as a companion caregiver. She aspires to become a nurse.

The court appointed a master who held a custody conference on March 17, 2014. Mother participated by telephone from Florida. On March 21, 2014, the trial court issued a temporary order based on the master's recommendation which granted shared legal custody to the parties, primary physical custody to Mother and supervised partial physical custody to Father every weekend in Florida, if possible.

On June 6, 2014, Father filed an amended complaint in which he requested primary physical custody and shared legal custody of Child. On July 3, 2014, Father also filed an emergency petition for special relief in which he requested the trial court to maintain jurisdiction over the custody matter pursuant to the UCCJEA [Pennsylvania Uniform Child Custody Jurisdiction and Enforcement Act],[5] and to order the return of Child to Pennsylvania until the entry of a final custody order.

The trial court held a pre-trial conference and a hearing on Father's petition on July 17, 2014. Mother again participated by telephone. After that hearing, the trial court found that Mother had moved to Florida with Child aware of the custody complaint, and without consent of Father or the court, and failed to comply with the relocation statute, 23 Pa.C.S.A. § 5337(c). (**See** Temporary Custody Order and Order Confirming Jurisdiction in Delaware County, Pennsylvania, 7/18/14, 2). The order

_____

[5] 23 Pa.C.S.A. §§ 5401-5482.

- 4 -

confirmed jurisdiction in Delaware County, Pennsylvania, and provided for joint legal custody and joint physical custody, without prejudice to review at a custody trial. (*See id.* at 1-5). The order also provided that Child temporarily reside with Mother in Florida, with liberal visitation availability to Father.

On November 5, 2014, two weeks prior to the custody trial on November 19, Mother filed a Notice of Relocation and a cross-complaint for legal and physical custody. On November 14, 2014, Father filed a counter-affidavit to Mother's notice in which he objected to the relocation.

The custody trial occurred on November 19, 2014. On December 19, 2014, the trial court entered the order at issue here. (*See* Final Custody Order, 12/19/14, at 1-32). After consideration of the statutory custody and relocation factors, the court, in pertinent part, awarded shared legal and physical custody of Child to the parties, denied Mother's request to relocate to Florida with Child, and ordered Mother to return with Child to Delaware County (or the Delaware County area, but in Pennsylvania) within sixty days. The order further provided that if Mother did not comply with the order to return to Pennsylvania, Father would be awarded primary physical custody, with partial physical custody to Mother. (*See id.* at 25).

Mother filed a petition for reconsideration on January 9, 2015, which the trial court denied by order signed on January 14, 2015. (*See* Order,

1/15/15). Mother timely filed her notice of appeal and statement of errors on January 20, 2015.[6] **See** Pa.R.A.P. 1925(a)(2)(i).

Also on January 20, 2015, Mother filed directly with this Court an "Emergency Application for Stay of Denial of Relocation Petition Pending Appeal." Father responded. This Court denied the emergency application in an order entered January 30, 2015.

On appeal, Mother presents the following hybrid question for our review:

> Did the [t]rial [c]ourt err in denying Mother's Petition to Relocate and in awarding shared physical custody to Mother and Father on a "week on, week off" schedule in that analysis of the sixteen custody factors found in 23 Pa.C.S § 5328(a) and the ten relocation factors found in 23 Pa. C.S. §5337(h) favor Mother?

(Mother's Brief at 2).

Our scope and standard of review in custody matters are well-settled:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law,

_____

[6] January 19, 2015, was the Birthday of Martin Luther King, Jr., a court holiday. Therefore, Mother's appeal filed on January 20 was timely. **See** 1 Pa.C.S.A. § 1908.

- 6 -

or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

Nonetheless, a broad scope of review should not be construed as providing the reviewing tribunal with a license to nullify the factfinding functions of the court of the first instance. We have stated that an appellate court may not reverse a trial court's custody order absent a showing that the trial court abused its discretion.

An abuse of discretion in the context of child custody does not consist merely of an error in judgment; it exists only when the trial court overrides or misapplies the law in reaching its conclusion or when its judgment is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record.

\* \* \*

Finally, we note that on issues of credibility and weight of the evidence, appellate courts must defer to the findings of the trial judge who has had the opportunity to observe the proceedings and the demeanor of the witnesses.

*Dranko v. Dranko*, 824 A.2d 1215, 1219 (Pa. Super. 2003) (citations, quotation marks and other punctuation omitted).

Also,

[w]e consistently have held that the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

Furthermore, we remain mindful that the primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (citing ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004)). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. ***See In re Adoption of T.B.B.***, 835 A.2d 387, 394 (Pa. Super. 2003).

Finally, we note that:

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

***S.M. v. J.M.***, 811 A.2d 621, 623 (Pa. Super. 2002) (citation omitted).

The child custody statute provides the following factors for the trial court to evaluate:

> In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there

- 8 -

is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

The relocation statute provides the following factors to be considered:

**Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

Preliminarily, in this appeal, we note that Mother's brief does not include a summary of the argument, as required by our Pennsylvania Rules of Appellate Procedure. (**See** Mother's Brief, at 7); **see also** Pa.R.A.P. 2111(a)(6). The brief also fails to include a copy of the statement of errors complained of on appeal. **See** Pa.R.A.P. 2111(a)(11). Similarly, the brief fails to include a copy of the trial court's opinion. **See** Pa.R.A.P. 2111(b).

Nevertheless, we conclude from our independent review of the argument section of Mother's brief that she claims the trial court abused its discretion by failing to give appropriate weight to the evidence supporting her complaint for custody. (**See** Mother's Brief, at 7-12). Mother also challenges the denial of her petition to relocate, and the order directing her to return with Child to the Delaware County area. (**See id.** at 12-15).

Notably, these claims vary materially from the question presented,

- 11 -

which posits an error of law by the trial court based on Mother's bald assertion that the statutory factors for custody and relocation favor her. (**See** Mother's Brief, at 2). Procedurally, therefore, Mother's argument fails to comply with Pa.R.A.P. 2119(a), which requires that the argument correspond to the questions presented.[7]

More substantively, Mother fails to develop an argument supported by pertinent authority on either of her claims. (**See** Mother's Brief, at 7-15); **see also** Pa.R.A.P. 2119(a), (b). Instead, Mother substitutes a narrative review of the facts of the case in which she invariably, if understandably, seeks to portray herself and her actions in the most favorable (or least unfavorable) light, and summarily concludes that the trial court's findings are not supported by competent evidence and should not be accepted. (**See**, **e.g.**, Mother's Brief, at 9, 11).

In other words, Mother does little more than re-examine the facts of this case, and ask us to reach a different conclusion. Mother fails to develop

---

[7] Specifically, Rule 2119(a) provides that:

> **General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).

a coherent legal argument to support her conclusion that the trial court erred at law in its determinations regarding the custody and relocation of Child. Also, apart from two cursory case references, Mother fails to support her argument by any citation to pertinent legal authority.[8]

"The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007), *appeal denied*, 982 A.2d 509 (Pa. 2007) (citation omitted). "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted). *See Chapman-Rolle v. Rolle*, 893 A.2d

---

[8] Mother paraphrases *Johns v. Cioci*, 865 A.2d 931, 936 (Pa. Super. 2004), somewhat out of context, for the undisputed but limited proposition that this Court must accept findings of the trial court that are supported by competent evidence of record. (*See* Mother's Brief, at 8). Mother's brief omits this Court's companion principle recognizing that "our role does not include making independent factual determinations." *Johns*, *supra* at 936 (citation omitted). Mother also references *B.K.M. v. J.A.M.*, 50 A.3d 168 (Pa. Super. 2012), generally, with no pinpoint citation. (*See* Mother's Brief, at 13). Mother claims, in effect, that the trial court disregarded parental duties she performed after she relocated. Mother fails to reference the record for the trial court's purported disregard of such evidence. (*See id.*). Thus, the brief fails to comply with Pa.R.A.P. 2119(c). It is not the role of this Court to scour the record to find evidence to support a litigant's argument. *See J.J. DeLuca Co. Inc. v. Toll Naval Assoc.*, 56 A.3d 402, 411 (Pa. Super. 2012). This argument would be waived for this reason as well. (*See infra.*).

770, 774 (Pa. Super. 2006) (stating, "[i]t is well settled that a failure to argue and to cite any authority supporting an argument constitutes a waiver of issues on appeal") (citation omitted).

"[T]he 'argument' section of an appellate brief must contain a full discussion of the points raised accompanied by citation to pertinent authority." *In re Child M.*, 681 A.2d 793, 799 (Pa. Super. 1996) (quoting Pa.R.A.P. 2119(a)). "It is the appellant's responsibility to precisely identify any purported errors." (*Id.*). Accordingly, we conclude that both of Mother's claims, which fail to develop arguments supported by pertinent authority, are waived. Moreover, Mother's claims would not merit relief.

Both of Mother's claims challenge the weight of the evidence; the first expressly, the second by implication. However, we defer to the credibility and weight assessments of the presiding trial judge unless they involve an error of law or are unreasonable in light of the sustainable findings of the trial court. *See C.R.F., III*, *supra* at 443.

Mother's general disagreement with the trial court's findings and conclusions is readily apparent. However, she identifies no specific error of law, or evidence of partiality, prejudice, bias or ill-will sufficient to prove an abuse of discretion. *See Dranko*, *supra* at 1219.

Mother does claim that the trial court is punishing her for relocating without the permission of the court. (*See e.g.*, Mother's Brief, at 12). However, this issue, not included in the statement of questions presented, is

merely speculative. Furthermore, it is bereft of any supporting authority, (**see id.**), and is belied by the trial court's careful analysis of all the applicable statutory relocation factors. (**See** Final Custody Order, 12/19/14, at 8-16). Moreover, Mother does not deny that she moved to Florida without court permission, while she had notice that a custody claim was pending. She cannot now avoid the consequences of her unauthorized relocation by the simple expedient of attributing a vindictive motive to the trial court without benefit of facts or proof. Mother's argument is unpersuasive.

If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. **See In re Adoption of T.B.B.**, **supra** at 394. Mother cannot dictate the weight the trial court places on evidence. **See S.M.**, **supra** at 623.

Finally, Mother's argument that the trial court "failed to exercise," (Mother's Brief, at 15), its right to order relocation forthwith, and abused its discretion by allowing her to remain in Florida for nine months until formal proceedings concluded, is utterly unsupported by any citation to authority, let alone pertinent authority, and borders on the disingenuous.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2015